# Palethorp's Estate. Provident Life & Trust Company's Appeal.

*Wills—Charitable bequests — Interested witnesses — Trustee — Stockholder—Acts of April 26, 1855, Sec. 11, P. L. 328-332, June 7, 1911, P. L. 702.*

1. Where a testator bequeathed a legacy to an incorporated academy of fine arts and one of the two witnesses to the will was a stockholder in such academy, whose ownership of stock entitled him to free admission to the art galleries, a privilege not enjoyed by the general public, and to vote for members of the board of directors, the will was not witnessed by two disinterested witnesses

as required by the Act of April 26, 1855, Sec. 11, P. L. 328-332, and the legacy was void.

2. Where a testator bequeathed a sum of money to a trust company, in trust for the purpose of caring for a memorial art collection given to a municipality and "for the purchase of paintings and works of art from time to time to add to that collection" and gave his residuary estate to the trustee, in trust to pay the net income therefrom "to such charitable institutions as my trustee may deem wise" the interest of the corporation in such gifts was such as would have disqualified it under the Act of April 26, 1855, P. L. 328, Sec. 10, as amended by the Act of June 7, 1911, P. L. 702, from witnessing the will had it been a natural person; for the purpose of determining what constitutes the disqualifying interest of an attesting witness in such gifts, the interest of the stockholders of the trustee corporation therein could not be differentiated from that of the corporation and the fact that one of the two witnesses to the will was a stockholder in the trustee corporation rendered such charitable gifts invalid.

*Trusts and trustees—Void testamentary trust—Perpetuity—Gift to provide guide to show graves.*

3. A testamentary devise of $150,000 in trust to maintain a family burial lot and to support a "proper person to attend to the care of the lot and show people where it is" is void as constituting a perpetuity not for a charitable use, except in so far as the reasonable care of the cemetery lot and the structures thereon is concerned.

Argued March 29, 1915. Appeal, No. 32, Jan. T., 1915, by the Provident Life & Trust Company of Philadelphia, executor of the will of Henry B. Palethorp, deceased, from decree of O. C. Philadelphia County, July T., 1914, No. 287, dismissing exceptions to adjudication, in estate of Henry B. Palethorp, deceased. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to adjudication.

The adjudication of DALLETT, P. J., was, in part, as follows:

The testator died May 20, 1913, leaving a will dated January 3, 1913, whereby after directing the payment

of his debts and funeral expenses and the erection of a tomb in his family lot in South Laurel Hill Cemetery similar to the one erected for his brother, he provides as follows:

"Third.—I give and bequeath unto my trustees by this my will appointed, one hundred and fifty thousand dollars to constitute a fund to be kept separate and apart, in trust, nevertheless, to invest, reinvest and keep the same invested under the powers and authorities by this my will upon my said trustees conferred, and to collect and receive the income, issues, dividends, and profits thereof, and after paying out of said income all lawful costs, charges, taxes, commissions and expenses incident to the care and management of said trust then to pay, expend, use and apply the net income therefrom when and as the same may be received, for the care and maintenance of the Palethorp family lot which belongs to the estate of my late father and mother, situate in South Laurel Hill Cemetery, Philadelphia, and for the care and maintenance and renewal of any tombs and copings or rebuilding that may be required in the judgment of my trustees, and for flowers to be placed and maintained there, and for the support and maintenance of some proper person to be from time to time selected and employed by my trustees to attend to the care and oversight of said lot and show people where it is and perform such further duties in relation thereto as my said trustees may prescribe from time to time in the exercise of their best judgment.

"Fourth.—I give and bequeath unto my trustees by this my will appointed, fifty thousand dollars, In Trust, nevertheless, to invest, reinvest, and keep the same invested under the powers and authorities by this my will upon my said trustees conferred, and to collect and receive the income, issues, dividends, and profits thereof, and after paying out of said income all lawful costs, charges, taxes, commissions and expenses incident to the care and management of said trust, then to pay, expend,

use and apply the net income therefrom when and as the same may be received, for the maintenance and care of 'The Palethorp Memorial Collection' hereinafter mentioned, and for the purchase of paintings and works of art from time to time to add to that collection, to be kept in Memorial Hall in Fairmount Park, Philadelphia. I give to the commissioners of Fairmount Park, Philadelphia, the portraits of my late father and mother described in the will of my late sister, Caroline Anna Palethorp, and the portrait of my late brother, Dr. John H. Palethorp, and all the bric-a-brac and works of art of all kinds which are now in my house at No. 1931 Arch street, Philadelphia. I will and direct that the entire collection shall be called 'The Palethorp Memorial Collection' and shall be kept in Memorial Hall in Fairmount Park, Philadelphia.

"Fifth.—I give and bequeath ten thousand dollars unto the Pennsylvania Academy of the Fine Arts now located at Broad and Cherry streets, Philadelphia, and also the two older portraits of my late father and mother and my own portrait."

Gave $75,000 to the General Assembly of the Presbyterian Church for the purpose of erecting a church on Palethorp street, Philadelphia, to be called "The Palethorp Memorial Presbyterian Church of the City of Philadelphia," $5,000 each to the Firemen's Pension Fund, the Police Pension Fund, the Jewish Hospital, the Pennsylvania Institute for the Instruction of the Blind, and the Presbyterian Home for Widows and Single Women in the State of Pennsylvania, $5,000 to the Board of Directors of City Trusts "to be invested by them according to law and income applied to the maintenance and support of Wills' Eye Hospital, $5,000 to the City of Philadelphia "for the erection of storm sheds or shelters in Fairmount Park" as therein particularly set forth, $5,000 each to the Contributors to the Pennsylvania Hospital and the Presbyterian Hospital for the

maintenance of a bed in each to be known as "The Pale-thorp Memorial Bed" and then provided:

"Sixteenth.—If there should be any residue of my estate I give and bequeath the same unto my trustees by this my will appointed, In Trust, nevertheless to invest, reinvest, and keep the same invested under the powers and authorities by this my will upon my said trustees conferred, and to collect and receive the income, issues, dividends and profits thereof, and after paying out of said income all lawful costs, charges, taxes, commissions and expenses incident to the care and management of said trust, then from time to time to allot and pay the net income among and unto such charitable institutions as my trustees may deem wise."

He then authorized his executor and trustee to retain any assets belonging to his estate at the date of his death and also gave them power to sell both real and personal estate.

He appointed the Provident Life & Trust Company executor and trustee.

The payment of collateral inheritance tax $600 on $12,000 (premises No. 1931 Arch street) on October 27, 1913, was duly vouched, as well as the payment of $4,-500 on $90,000 "on account" on May 15, 1914.

Messrs. White, Sterrett, Tustin and Wesley on behalf of testator's next of kin questioned the validity of testator's gifts for charitable purposes on the ground that the will had not been witnessed by two disinterested witnesses within the meaning of the Act of Assembly and as well urged that the testator's gift of $150,000 for the care of his cemetery lot and the support and maintenance of a proper person to care for the lot and "show people where it is" was in part an unlawful perpetuity and therefore wholly void.

The objections raise questions as to interest of the executor and trustee and the relationship of the witnesses to the executor and trustee, and as well as to

whether the Act of June 7, 1911, P. L. 702, applies to the several trusts for specific purposes.

In Kessler's Estate, 221 Pa. 314, Mr. Justice ELKIN for the Supreme Court in discussing the interest of a witness said:

"If the attesting witness be interested as legatee or devisee under the will, or is to derive a pecuniary benefit or advantage from any part of it, or if he is interested at the time of attestation in a religious or charitable institution to be benefited thereby, he is not disinterested within the meaning of the statute."

In Jeanes' Estate, 228 Pa. 537, Mr. Justice BROWN in discussing the character of the interest which would disqualify said:

"If he was interested within the contemplation of the act, the amount of his interest would be immaterial, for the doctrine de minimis non curat lex has no application. The test is not quantity, but quality.

"Interest which, under the Act of April 26, 1855, P. L. 328, disqualifies a witness from attesting a will containing religious or charitable bequests must be a present, certain, and vested one. It must not be uncertain, remote or contingent."

In this will the testator has appointed The Provident Life and Trust Company executor and trustee. The appointment as executor would not alone disqualify because as was said in Jordans' Est., 161 Pa. 393, the compensation of the executor would not be affected by reason of the validity or invalidity of any gift made by the testator.

Whether the duties, responsibilities and power given to the accountant as trustee added to its duties as executor do disqualify is the question to be determined in this estate. In other words has this accountant such an interest in the testator's estate as was referred to by Mr. Justice ELKIN in Kessler's Estate or such a present, certain and vested interest as to come within Mr. Justice BROWN's definition in Jeanes's Estate.

By the fourth item of his will the testator gives the accountant as trustee $50,000:

"To pay, expend, use and apply the net income therefrom when and as the same may be received, for the maintenance and care of 'The Palethrop Memorial Collection' hereinafter mentioned, and for the purchase of paintings and works of art from time to time to add to that collection, to be kept in Memorial Hall in Fairmount Park, Philadelphia."

And with regard to residue he provides:

"If there should be any residue of my estate I give and bequeath the same unto my trustees by this my will appointed, In Trust, nevertheless, to invest, reinvest and keep the same invested under the powers and authorities by this my will upon my said trustees conferred, and to collect and receive the income, issues, dividends and profits thereof, and after paying out of said income all lawful costs, charges, taxes, commissions and expenses incident to the care and management of said trust, then from time to time to allot and pay the net income among and unto such charitable institutions as my trustees may deem wise."

The testator has therefore imposed upon his trustee the duty of caring for $50,000 and applying the income to be derived therefrom in the care of a Memorial Collection and "for the purchase of paintings and works of art from time to time to add to that collection," and as well in the event that there should be any residue the duty of paying any income to be derived from said residue to "such charitable institutions as my trustees may deem wise."

These are not the usual duties imposed upon a financial corporation appointed as trustees to care for the principal and pay income either to charities or individuals for purposes. This trustee is given wide discretion in all matters. It is not only to apply income in the care of the collection of paintings to be placed in Memorial Hall, but to apply it itself and to purchase paint-

ings and works of art to be added thereto, and if there is any income derived from residue it is to select the beneficiaries to whom income is to be paid.

Such liberal discretion in the expenditure of income amounts to little less than a gift of the income itself. It might fairly be said that this trustee had been favored with a limited power of appointment over income. With no interested party to question the wisdom of the exercise of the discretion given there would be little opportunity to control its exercise.

And if as was said in Stinson's Est., 232 Pa. 218, the appointment on a board to manage a charity was a disqualifying interest the mere statement of the powers of this trustee would seem to be sufficient to determine the fact that this trustee was interested.

Being of the opinion therefore that the trustee's interest is such an interest as disqualifies, were the attesting witnesses interested in the corporation trustee to such an extent as would disqualify them?

B. F. Jones as appears from his testimony was on the date of the execution of the testator's will employed in the Deposit and Trust Department of The Provident Life and Trust Company. He did not own any stock in the said company and was not therefore an interested witness: Carson's Est., 244 Pa. 401.

Richard T. Cadbury at the date of the execution of the testator's will was employed as an assistant in the Trust Department of the Provident Company. He was at the time the owner of ten shares of stock in said company and it may be said at that time also owned one share of stock in the Pennsylvania Academy of Fine Arts which entitled him to vote at certain elections and to a free ticket of admission to the academy. There are 10,000 shares of stock of the Provident Life and Trust Company of the par value of $100 each, and 4,463 shares of stock of the Academy of Fine Arts of the par value of $100 each.

Whether the ownership of shares in a corporation upon which dividends are paid disqualifies the holder

thereof as an interested witness does not appear to have been definitely decided. The question was suggested in Carson's Estate, supra, but as in that case there were four witnesses two of whom were merely employees and so competent the determination of the question as to stockholders was not necessary and as Mr. Justice BROWN said "is a question which we need not decide."

In Jeanes's Estate, supra, however where the witness was a stockholder the decision appears to have been based upon the facts that the shares of stock directed to be held by the trustee were stock of the trustee company and that as a consequence the interest of the witness was so uncertain, remote and contingent as not to disqualify. Mr. Justice BROWN for the Supreme Court however there declared that the amount of interest was immaterial and that the test was quality and not quantity. And as was said in Kelly's Est., 236 Pa. 54, "The law will not attempt to weigh and measure the advantage resulting to the legatee in order to determine the question of his competency as an attesting witness to a will of this character. It will assume his interest from the single fact that he is a legatee named in the will."

If this be the law Mr. Cadbury was an interested witness. Had he been the owner of 9,000 shares of the 10,000 shares of stock in the Provident Life and Trust Company there probably would be no question as to his interest as a stockholder in the doings of the company. Or if he had such majority interest as would empower him to select the management of the company it would be difficult to say that he had no interest. And if the test of interest is quality not quantity the ownership of his ten shares must be held to give him a present and certain interest.

Being of the opinion therefore that not only the trustee was interested under the testator's will but that Mr. Cadbury as a stockholder was interested the auditing judge must find that the testator's will was not attested by the "two credible, and, at the time, disinterested wit-

nesses" required by the Act of April 26, 1855, P. L. 328.

This view brings into question the Act of June 7, 1911, P. L. 702, which provides:

"That no estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person in trust, for religious or charitable uses, except the same be done by deed or will attested by two credible, and, at the time, disinterested witnesses at least one calendar month before the decease of the testator or alienor—a disinterested witness being a witness not interested in such religious or charitable use, this act not being intended to apply to a witness interested in some other devise, bequest, or gift in the same instrument; and all dispositions of property contrary hereto shall be void, and go to the residuary legatee or devisee next of kin, or heirs, according to law. Provided, that any disposition of property within said period, bona fide made for a fair valuable consideration, shall not be hereby avoided."

That this act was intended to apply only to charities in which the witness was interested has been the interpretation of this act accepted by the bar. It was apparently passed as a result of the decision in Kessler's Est., 221 Pa. 314. Such was the view expressed by the present auditing judge in Kelly's Est., 21 D. R. 81—236 Pa. 54, and he sees no reason to now modify that view. "A disinterested witness being a witness not interested in such religious or charitable use." "Such" evidently restricts the interest of the witness to the charity in which he is interested and which is the only gift affected. The amendment either has this meaning or is meaningless.

Applying this view to the particular provisions of this testator's will the auditing judge holds not only that the testator's gift of residue is invalid, but that his gifts of $10,000 to the Pennsylvania Academy of Fine Arts, (Mr. Cadbury having a personal interest in that corporation) and of $50,000 for the care of his collection of paintings

and the purchase of additional paintings and works of art are also invalid.

The remaining question concerns the testator's gift of $150,000.

With regard to this gift.

The cemetery lot is approximately twenty by thirty feet in size. Fifteen thousand dollars has been expended in erections thereon. There is already in existence a trust fund of $1,000 to provide for its care. According to the superintendent of the cemetery that company in 1911 estimated that the income derived from $1,000 would be sufficient to keep this lot in order, but would not provide for replacing memorials.

Notwithstanding the fact that the Act of May 26, 1891, P. L. 119, declares that a gift for the maintenance of a cemetery lot "shall be held to be made for a charitable use" the auditing judge interprets that act as contemplating only the validity of such a trust because of its being in perpetuity—otherwise any bequest for the care of a cemetery lot would be void if not executed in accordance with the provisions of the Acts of 1855 and 1911.

Is this gift then invalid as being a void perpetuity? It is hornbook law that a testator may do with his own as he wishes so long as his purposes are within the law.

A trust for the care of a cemetery lot, for the maintenance of tombs thereon, and as well of flowers, is lawful. In part at least therefore the testator has created a legal trust. He however has added a provision that the income derived from his legacy shall also be used for the support and maintenance of a person to be selected by his trustee to care for said lot, "to show people where it is," and to perform such other duties as his trustee might designate.

Is this purpose lawful?

If so centuries from now when deeds of the public benefactors of to-day shall have been forgotten "a proper person" maintained under the direction of this court may be "showing people" the lot wherein is interred the

body of this testator and of his father and mother, or devoting his time to the destruction of such tomb as then exists and the erection of another in keeping with the period. What he will be doing will depend upon the whim of the then trustee. Could the income to be derived from the testator's gift be reasonably applied in the "maintenance or care" of the cemetery lot in which he and his parents are buried or the graves therein or any monuments or copings or erections thereon his gift would be protected by the Act of 1891 but he himself by providing for the maintenance of the person to look after such duty and to show people where such an unreasonable expenditure of money is not only at the time going on but is to go on forever has himself clearly indicated a gift for purposes not contemplated by the Act of May 26, 1891, P. L. 119.

The case is similar in a great measure to Detwiller v. Hartman, 37 N. J. Eq. 347, where a testator directed the maintenance of a military band to march to his grave on the anniversary of his death and other holidays and play funeral marches and other appropriate music, and where it was held that the object of the testator was to perpetuate the memory of his family name in a manner which could confer no public benefit or use.

So certainly would be this testator's direction for a perpetual barker.

Or as was said by President Judge SITTSER in Methodist Episcopal Ch. of Wells v. Gifford, 5 Pa. C. C. 92.

"The affection of relatives and friends or public services may preserve a man's memory for some time. However strong and great these may be, his memory must eventually perish. But under this will, Gifford's grave must forever be kept in repair. When Cæsar is forgotten, Gifford's grave must be remembered. In the year of our Lord 10,000 a trustee, under the supervision of the Orphans' Court, must see that his grave is properly turfed and free from woods. Through all time, Gifford's grave must be kept green. Many such charities would

impoverish the living to decorate the graves of the forgotten dead."

The auditing judge is therefore of the opinion that the testator's gift of $150,000 for the care of his cemetery lot and the added purpose indicated by his will is void as creating a perpetuity except in so far as the reasonable care of his cemetery lot and the structures thereon is concerned.

Authorities were cited to sustain the position that if part of such a gift was void the whole gift failed. An examination of the authorities however leads the auditing judge to a different conclusion.

Andrew v. N. Y. Bible & Common Prayer Book Society, 4 Sandf. N. Y. 156, does not appear to be in point. The decisions in Fowler v. Fowler, 33 Beavan 616; Bradson's Est., 16 Pa. D. R. 669, and Van Syckel v. Johnson, 70 Atl. Repr. 657, citing Coit v. Comstock, 51 Conn. 352, all seem to be based upon the theory that the respective funds for legal and illegal purposes could not be ascertained. Fowler v. Fowler, 33 Beav. 616, was decided in 1864.

In Hoare v. Osborne, L. R. 1 Eq. 585, decided in 1866, Sir R. T. Kindersley, Vice Chancellor, took a different view and apportioned the fund for the respective purposes. And in re Vaughan, L. R. 33 Ch. D. 187, decided in 1886, Justice NORTH again apportioned the fund awarding so much as was for the legal purpose for that purpose. And JARMAN on Wills on page 458 notes that the decision in Fowler v. Fowler, 33 Beav. 616, "must be considered overruled." See also in re Rigley's trusts, (L. J. 36 Ch. 147) and in re Rogerson, (L. R. (1901) 1 Ch. 715).

The auditing judge therefore believes that the award only of an amount the income derived from which could reasonably be used in the care of the testator's cemetery lot and repair and replacement of the erections thereon would be proper.

As was represented at the audit the cemetery now

holds a fund of $1,000 for the care of this lot. Such reasonable amount as should be added for the purpose will be added and the auditing judge in the absence of an agreement of the parties will determine what that amount should be at a subsequent audit. Perhaps so much as $10,000 would be reasonable. Any excess in his opinion must fall into residue and be distributed among the testator's next of kin, and he will therefore so award.

On exceptions to the adjudication filed by the executor and trustee and by the next of kin, GEST, J., filed the following opinion:

The exceptions filed in this case raised several important questions, which will be considered seriatim:

1. The interest which disqualifies a witness to a bequest for a religious and charitable use was under the Act of April 26, 1855, Sec. 11, P. L. 328, Stew. Purd. 4115, held in the earlier cases, to be restricted to a pecuniary legal interest, so that he would gain or lose by the decision, Taylor's Est., 16 Philadelphia 274, citing McMurray's App., 13 W. N. C. 186; Comb's App., 105 Pa. 155; Evan's Est., 12 D. R. 694, but in Kessler's Est., 221 Pa. 314, the Supreme Court held that the disqualifying interest was not merely such personal interest as appeared by the will itself, but such as existed by reason of the attesting witness being then interested in the religious or charitable institution for which provision was made by the testator, or both or either as the case may be, and this doctrine was applied in Stinson's Est., 232 Pa. 218, to a case where the witness was interested as a member of the "executive committee" of a charity created by the will. Mr. Justice BROWN in that case said, "The act is intended as much for such a case as if the bequest or devise is to a charity in existence at the time of the execution of the will in which the testator would make it the object, or one of the objects, of his bounty."

In all the cases that arose under the Act of 1855, it was held in the language of Kessler's Est., 221 Pa. 314, that an interest in any part of the will would disqualify a

witness for the purpose of attestation, and that the attestation of the execution of the whole instrument was what is required by the statute. In other words, first, an attesting witness, who was a legatee under the will, was disqualified although he had no interest in any charity benefited by the will; and secondly an attesting witness interested in a single charity thus benefited was likewise disqualified with respect to all charities including those in which he had no interest. See Fetterhoff's Est., 228 Pa. 535; Shoemaker's Est., 235 Pa. 402; Kelly's Est., 236 Pa. 54; Leech's Est., 236 Pa. 57. This being the result of the decisions, the Act of June 7, 1911, P. L. 702, Stew. Purd. Supp. 568, was passed defining a distinterested witness as "being a witness not interested in such religious or charitable use, this act not being intended to apply to a witness interested in some other devise, bequest or gift in the same instrument."

It was ingeniously argued in behalf of the next of kin that the words "interested in some other devise, etc.," mean that the act shall not apply where the witness is not interested in any gift for a charitable or religious use, but may be interested in "some other devise, etc.," i. e., that the act is not intended to apply to a witness who is interested in some other devise, bequest or gift in the same instrument, that is, some other devise, bequest or gift than such charitable devise, bequest or gift. The effect of this construction of the act would be merely to remove the disqualification arising from the interest of the witness in some bequest other than for a charitable use, but to retain the disqualification arising from the interest of the witness in some bequest for another charitable use. According to this view, all of the charitable bequests would fall if one of the attesting witnesses should be held to be interested in any one of them.

In our opinion this would be a very narrow and technical construction of an act of assembly, which is remedial in its nature and evidently designed to alter the existing law. According to the rules laid down by Lord

Coke in Heydon's Case, 3 Coke Repr. 18, as cited and commented upon by Judge ENDLICH in his work on the Interpretation of Statutes, Sec. 27, there should be considered, 1. What was the law before the act was passed; 2. What was the mischief or defect for which the law had not provided; 3. What remedy the legislature has appointed, and, 4. The reason for the remedy.  Now it is clear that the theory of the prior decisions was that the will must be considered as an entire instrument, so that any interest in any part of it operated as an entire disqualification; and if it be admitted, as it is and must be, that the Act of 1911 applies to the case of a witness who would be disqualified by reason of his pecuniary interest as a legatee, it is difficult to see why it should not also apply to the case of a witness, who would be disqualified by reason of his interest in another charity. The two cases are in pari materia, and as was said in Umholtz's License, 191 Pa. 177, a remedial statute is to be extended to cases in equal mischief.  Brown v. Commonwealth, 3 S. & R. 273.

We are, therefore, of opinion that the legacies bequeathed to religious and charitable uses by the sixth and subsequent clauses of the will to and including the fifteenth are valid, and the exceptions filed by the next of kin to their allowance by the auditing judge are dismissed.

2. By the fifth clause of the will, the testator bequeathed a legacy of $10,000 and certain portraits to the Pennsylvania Academy of Fine Arts.  Richard T. Cadbury, one of the subscribing witnesses, was at the date of the execution of the will, Paxson's Est, 221 Pa. 98, the owner of a share of stock in that institution, which he afterwards sold for $20.  As such stockholder he had the right of voting at elections and a free ticket of admission. Although he received no other pecuniary benefit, yet he had a right not possessed by the general public without payment to the use and enjoyment of the collection of works of art, and of the library, etc., as stated in the

charter of the academy. These were valuable rights, and evidently there was some one who considered them worth $20, besides which his electoral franchise vested in him a right enforceable by law, if its exercise should be denied or impeded, and thus he had a personal interest in the academy. It is not possible for us to say that his interest was inconsiderable or not of sufficient amount to influence him or induce him to influence the testator. The law will not attempt to weigh and measure the advantage or interest in order to determine the competency of the witness. Kelly's Est., 236 Pa. 54.

We, therefore, agree with the auditing judge, that the legacy to the Academy of Fine Arts is invalid, and its exceptions are dismissed.

3. Mr. Cadbury was also the owner of ten shares of stock of the Provident Life and Trust Company, named as executor of the will and trustees under the fourth and also the residuary clauses of the will. The fact that he is assistant to the trust officer of the company is, of course, not important, Comb's App., 105 Pa. 155, but his position as a stockholder is a very different one. The Provident Life and Trust Company is not only legally entitled to commissions as trustee upon the income collected by it, but the testator expressly authorized his trustee to deduct commissions from the income. Mr. Cadbury's interest as a stockholder may be very small, but can hardly be said to be nonexistent. As the auditing judge forcibly and logically says, if the witness had been the owner of 9,000 shares, the total number of shares of capital stock being 10,000, there would probably be no question as to his interest, and if the test of interest is quality and not quantity the ownership of ten shares must be held to give him a present and certain interest. The facts were very different in Jeanes's Est., 228 Pa. 537, for it was there said that it was scarcely conceivable that the company would claim compensation as trustee, and if claimed it would hardly be allowed; and in the same case the Supreme Court said that if the witness "was in-

terested within the contemplation of the act the amount of his interest would be immaterial for the doctrine de minimis non curat lex has no application. The test is not quantity, but quality.

The case of an executor is different under the decision in Jordan's Est., 161 Pa. 393, but as was said in Kessler's Est., 221 Pa. 314, at page 322, that case is authority only for the exact question therein decided and its doctrine will not be further extended. The trustee in this case stands in a very different position, especially under the residuary clause where it is given an unlimited discretion for all time to allot the net income among such charitable institutions as it the trustee may deem wise. An executor is only entitled to commissions as compensation for his services in the administration of the estate, which are not affected by the nature of the charitable bequests or their validity. We agree with the auditing judge that this branch of the case is ruled in principle by Stinson's Est., 232 Pa. 218. The exceptions of the trustee filed to the disallowance of the legacies in the third and in the residuary clauses of the will are, therefore, dismissed.

4. The auditing judge has so well disposed of the questions raised upon the bequest of $150,000 for care of his cemetery lot, that it is not necessary to add anything to what he has said.

The court dismissed the exceptions. The Provident Life & Trust Company of Philadelphia, executor and trustee, appealed.

*Error assigned* was in dismissing the exceptions.

*John G. Johnson,* with him *J. B. Townsend, Jr.,* for appellant.—Richard T. Cadbury's interest in the Pennsylvania Academy of Fine Arts, beneficiary, was not the pecuniary vested and legal interest such as the law contemplates: Jordan's Est., 161 Pa. 393; Jeanes's Est., 228 Pa. 537.

The interest of Mr. Cadbury as a stockholder of the Provident Life & Trust Company did not disqualify him from witnessing the will, so as to render the bequests to the said trust company for charitable uses invalid: Jordan's Est., 161 Pa. 393; Kessler's Est., 221 Pa. 314; Jeanes's Est., 228 Pa. 537.

The executor and trustee had merely the power of appointment over the residue: Beck's App., 116 Pa. 547; Murphy's Est., 184 Pa. 310; Domestic & Foreign Missionary Society's App., 30 Pa. 425; Morice v. Bishop of Durham, 9 Ves. 399; Witman v. Lex, 17 S. & R. 88; Rotch v. Emerson, 105 Mass. 431; Goodale v. Mooney, 60 N. H. 528; Schleicher's Est., 201 Pa. 612; Watts Est., 202 Pa. 85; Dulle's Estate, 218 Pa. 162.

Even though interested under the Act of April 26, 1855, P. L. 328-332, Mr. Cadbury was not interested under the Act of June 7, 1911, P. L. 702; the interest which disqualifies a witness under the Act of 1911 is an interest in a religious or charitable use, not in the legal estate: Stinson's Est., 232 Pa. 218.

*Thomas Raeburn White,* with him *Robert J. Sterrett* and *Tustin & Wesley,* for the next of kin, appellees.—Mr. Cadbury had a pecuniary interest in the Pennsylvania Academy of Fine Arts and the gift to the academy is therefore invalid: Jeanes's Est., 228 Pa. 537.

The Provident Life & Trust Company was entitled to receive commissions on the principal and interest of the gifts in trust; each of its stockholders had therefore a pecuniary interest in said gifts and was disqualified from witnessing the will: Jeanes's Est., 228 Pa. 537; Jordan's Est., 161 Pa. 393; Kessler's Est., 221 Pa. 314.

The Provident Life & Trust Company was interested in the management of the charitable uses and Mr. Cadbury was therefore interested therein: Stinson's Est., 232 Pa. 218; Kessler's Est., 221 Pa. 314.

OPINION BY MR. JUSTICE ELKIN, May 10, 1915:

In the presence of two subscribing witnesses the testator signed and published his will 3d January, 1913. After directing that a tomb be erected on the family burial lot in the cemetery, he gave his entire estate to charitable uses, and named the Provident Life & Trust Company as executor and trustee. The execution of the will was witnessed by B. F. Jones, who at the time was an employee in the trust department of appellant, and by Richard T. Cadbury, assistant to the trust officer and a stockholder in said corporation. The primary question for decision is whether the execution of the will was attested by "two credible, and, at the time, disinterested witnesses" as the Act of April 26, 1855, P. L. 328, requires; and as to several of the bequests it is necessary to determine what constitutes "a disinterested witness" under the Act of 7th June, 1911, P. L. 702. As to the witness, Jones, nothing need be said for the reason that the record does not disclose anything to indicate that he was interested, within the meaning of the statutes, either in the trustee corporation or in any of the charitable institutions named as beneficiaries. As to Cadbury the situation is very different. He is a stockholder in the corporation named not only as executor under the will but as trustee, having the management and control of two of the charitable bequests, and said trustee is also the residuary legatee, with power to appropriate the income perpetually to such charitable uses as it "may deem wise." The trustee is given broad and comprehensive powers in the administration of the trust estate, all of which goes to worthy charities under the provisions of the will. These powers give the trustee authority to retain the assets, investments, securities and real estate which comprise the principal of the estate, for any length of time it may deem expedient; to invest and reinvest the principal of the trust estate, and to sell and dispose of all or any part of the assets, investments, securities and real estate for such price and upon such

terms as the executor and trustee in their respective capacities may deem fit and proper; and to make, execute and deliver such deeds, assignments, transfers and other legal instruments as may be required to pass title in fee simple or otherwise, free and discharged of all trusts. In other words the trustee, as to such property as comes into its hands, has the absolute power of control and administration, subject of course to such directions as the testator gave in those clauses of his will making specific bequests for charitable uses to certain named beneficiaries. It would be difficult to conceive of a trustee possessing greater powers than the testator in the disposition of his estate thought proper to confer upon those selected by him to administer it. The appellant corporation was appointed to serve in the dual capacity of executor and trustee, and while interested in both relations, for the purpose of this case we need only consider how he is interested as trustee. According to the established facts in this case, it is within the bounds of exact statement to say, that under the rule of all our cases the corporation itself had such an interest as to disqualify its officers or managers acting upon its authority and in its behalf as an attesting witness under the Act of 1855. If the interest of the corporation was a disqualifying one, it would seem to necessarily follow that the interest of a stockholder must be so regarded. The stockholders own and control the corporation, and whatever benefits accrue to the corporate body inures to the stockholders in dividends, increased earnings, assets or investments which add value. In determining what constitutes a disqualifying interest of an attesting witness to a will under our statutes, a corporation as a legal entity cannot be differentiated from its shareholders who are the real owners of the corporate property, who control and direct its business affairs, and who are responsible for those in charge of its management.

We, therefore, concur in the views expressed by the learned auditing judge and by the court in banc upon

the question of Cadbury being interested in certain charitable bequests and hence disqualified under the Act of 1855 as an attesting witness in so far as these gifts are involved.

What has been said applies to the bequest of $50,000 in the fourth clause of the will, and to the sixteenth clause which gave the residuary estate to the trustee for charitable uses.

In the fifth clause the testator gave $10,000 to The Pennsylvania Academy of Fine Arts, which is an incorporated society, with shares of stock issued and outstanding. Cadbury was a stockholder in this corporation and the court held that he had such an interest in the charity to be benefited by the gift as to disqualify him as a witness to the will. It was decided in Kessler's Est., 221 Pa. 314, that if a subscribing witness be interested at the time of attestation in a charitable institution named as a beneficiary under the will, he is not disinterested within the meaning of the statute. Cadbury was interested as a stockholder in the Academy of Fine Arts, and therefore came within the letter and spirit of the rule. The fact that an attesting witness may own one share, or five shares, or ten shares, or fifty shares, can make no material difference in the application of the principle involved. In many instances the rule may seem to be a harsh one, but the legislature had the power to prescribe how testamentary writings shall be executed and by whom they shall be attested, and having exercised that power by requiring wills containing charitable bequests to be attested by "two credible, and, at the time disinterested witnesses," it is the duty of the courts to enforce the law as it is written. If for any reason it be deemed wise to change or modify this rule of law the question should be brought to the attention of the legislature and not to the courts.

The first assignment of error relates to the bequest of $150,000 for the care of the cemetery lot in which the testator was buried. We do not find any reference to

this question in the printed argument and must conclude that counsel for appellant do not care to press it. The reasoning of the learned auditing judge as to this item is convincing and the equitable disposition made for setting aside a proper sum for this purpose should meet with the commendation of all concerned.

We entirely agree with the learned court below that only those gifts to religious and charitable uses, in which the attesting witness had an interest, are invalid under the Act of 1911. The learned judge who wrote the opinion of the court in banc has discussed this question in such a clear and convincing manner that we might well adopt his language as expressing the views of this court. But since it is a new question we will discuss it very briefly on the cross appeal from the same decree now pending here, upon which appeal we are asked to reverse the court below for sustaining the legacies bequeathed to religious and charitable uses by the sixth and subsequent clauses of the will to and including the fifteenth.

Assignments of error overruled and decree affirmed. Costs to be paid out of the estate.