## Wood Estate

*High, Swartz, Childs & Roberts* and *Morgan, Lewis & Bockius,* for accountants.

*Russell J. Brownback* and *Rodney T. Bonsall,* for trustee.

TAXIS, P. J., July 10, 1957.—Mary Harry Wood died on December 12, 1918, and in her will dated March 30, 1907, provided in item five as follows:

"I give and bequeath unto Howard Wood, Richard G. Wood and Clement B. Wood and their successors, the sum of Two thousand dollars In Trust nevertheless to invest and keep invested the said sum perpetually in good and safe securities the income alone to be used for purpose of maintaining the lot in Woodland Cemetery in which my husband is buried, and all the graves therein in first-class order and repair forever. . . . At the election of said Trustees payment of said sum shall be made in preferred stock of 'Alan Wood Iron and Steel Company' or in preferred stock of 'Johnson and Johnson' or partly in both at the par value thereof, in which event said Trustees may hold said preferred stock as an investment for the purposes of the trust without responsibility or liability for any loss by so doing."

The present account is filed because of the death of Howard Wood, Jr., a cotrustee, on January 18, 1956, and also to seek termination of the above trust and distribution of the excess principal and accumulated income to the residuary legatees under testatrix's will.

The account shows the book value of the principal of the trust amounts to $1,836.52, and the book value of the income to $9,224.48, or a total of $11,061. The market value of the principal on April 15, 1957, was $5,122, and the accumulated income was $10,405.10, making a total of $15,527.10. Since 1942 the account shows that $624.50 have been the total expenses used in maintaining the lot and that during the entire trust since 1919, the total maintenance expenses have been $1,440.55. In the years 1942 to 1957, inclusive, total maintenance expenses including extraordinary repairs to several grave stones amounting to $892.50 or a yearly average of $55.19. During the entire period of trust the lots have been given special care by the ceme-

tery company and have been kept in an excellent state of repair.

The income of the trust for the period covered by the present account since 1942 has amounted to $7,079.19, or an average of $442.45 per year. In 1956 income amounted to $646.81, or almost 12 times the yearly average expense since 1942. I find, therefore, that the values of the corpus at the present time, together with the yearly income from the trust far exceeds the amount needed to properly maintain and carry out the provisions of testatrix's will. The trustees are presently accumulating income at such a rapid rate that the trust will attain a size completely out of proportion to its purposes unless the principal and accumulated income in excess of $2,000 are distributed by the trustees.

The Woodland Cemetery Company by a letter submitted at the time of the audit is willing to accept the sum of $2,000, the amount originally left by the testatrix as an addition to its perpetual care fund and will undertake to provide care for the lots and keep the gravestones in good repair. The cemetery company has refused to accept appointment, however, as a trustee of the trust. Cf. Ward Estate, 7 Fiduc. Rep. 100.

The trustees ask that the excess of the amount needed to maintain the lots be awarded to the residuary heirs. I conclude that such an award can be made whether it is at the inception of the trust as was done in Dreisbach Estate, 384 Pa. 535, and in Palethorp's Estate, 249 Pa. 389, or, as here, after the trust has been in operation for a number of years. . . .

And now, July 10, 1957, the trust is terminated and there is awarded to the Woodland Cemetery Company, Perpetual Care Fund, the sum of $2,000 in cash, and the balance of principal and accumulated income is

580

herewith awarded to Charles C. Highley, trustee under deed of trust of Mary W. Highley, dated May 13, 1948.

The account is confirmed, and this adjudication is confirmed nisi.