## Mayer Estate

*Milton A. Kamsler*, for accountant.

SHOYER, J., February 23, 1961. — Mary Anna Mayer, also known as Mary A. Mayer, died October 31, 1959, not survived by a spouse, and leaving a will, a copy of which is hereto annexed, whereby she made certain provisions with reference to the purchase of a cemetery lot and the erection of a mausoleum, as hereinafter discussed; gave $500 for flowers for the graves of Charles, Bill, her mother and father, as particularly set forth in the will, and $500 for a headstone to be placed on "Moms Pops and Bill grave"; gave $1,000 to her half brother, John Brier, described in the will as her brother; gave $1,000 to her brother, Albert F. Walsh; gave $500 to her niece, "Emily Link and Charles"; made a number of gifts of personal effects, as set forth in the will and statement of proposed distribution, and gave the residue of her estate to her brothers, Charles Walsh and Albert F. Walsh.

It appears from the statement of proposed distribution that all of the parties in interest are sui juris, and have had notice of the audit and of the burial question. . . .

The only question requiring adjudication arises out of testator's direction that "I want a Mausoleum build only for the two of us, Charles and myself. I am sure (15,000) fifteen thousand dollars will cover it that about the amount I want spent, I have inquired about it. . . ."

Jenaro Lutz, manager of the Westminster Cemetery, testified that in 1956, decedent came to the cemetery and spoke with him about purchasing a lot for a mausoleum, and she selected a lot 20′ x 20′ at the cemetery, which Mr. Lutz held for her until 1957. The price for the lot was $1,800, and the amount required for the permanent maintenance fund, a necessary accompani-

ment, would have been $1,500. However, in 1958, decedent told Mr. Lutz she was not going to bother with the large lot for the mausoleum, and she finally selected a smaller lot, 10' x 10', which was too small for a mausoleum, and instructed Mr. Lutz to disinter her husband from his resting place in her family's lot in that cemetery and have him reburied in the lot which she had just purchased. The husband was reinterred on November 18, 1958, in the presence of decedent and her family, and decedent ordered a monument to be placed on the new lot, the stone to be inscribed with her husband's name and dates of birth and death and her name and date of birth; the stone was not completed and placed on the grave until a month after decedent's death.

Mrs. Eleanor Walsh, decedent's sister-in-law, testified that decedent had discussed with her the reburial of decedent's husband, and that she was present with her husband and decedent when the reburial took place; that pursuant to decedent's request, she composed a letter to Mr. Lutz, which decedent copied, in which decedent referred to the payment which she was then making in the sum of $285 for lot no. 630 and wrote of her anxiety to have her husband's remains transferred to the new lot. Mrs. Walsh produced the letter which she composed as well as decedent's letter dated July 18, 1958, which she identified as being in decedent's handwriting and signed by decedent.

Comparison of decedent's holographic will with her letter of July 18, 1958, insofar as punctuation, grammar, composition and clarity are concerned, make apparent the reason why decedent requested her sister-in-law to compose the letter to Mr. Lutz. Even then, decedent in copying the July 18, 1958, letter, misspelled some words.

Be that as it may, it is clearly evident from decedent's letter that, insofar as her own burial and the

reburial of her husband were concerned, she had changed her earlier intentions as theretofore expressed in the probated will. This letter, while making no disposition of decedent's property, was nonetheless testamentary in character, since it provided for her own burial as well as the disinterment and reburial of her husband: Dreisbach Estate, 384 Pa. 535, 541. Being testamentary in character, the letter should have been offered for probate together with the plot plan for lot no. 630, to which reference is made in the letter. Insofar as the provisions of this codicil are antagonistic or supplementary to the will, the changes made are to be enforced, for they are later in time: Vernier's Estate, 282 Pa. 194, 198; Bissell's Estate, 302 Pa. 27, 32; Elkins' Estate, 339 Pa. 193, 200; Weaver Estate, 162 Pa. Superior Ct. 578; Restatement of Property §247.

Obviously, decedent shortly before her death had abandoned and made nugatory her earlier provisions for the mausoleum.

In the circumstances, decedent's personal representative is hereby directed to offer for probate, as a codicil to her will, decedent's letter dated July 18, 1958, and the grave plot plan for lot no. 630. Absolute confirmation of this adjudication will be suspended until proof of compliance with this direction for probate is submitted to the auditing judge.

The court is well aware that ". . . the line of demarcation between matters of probate and of distribution or construction is distinct and definite" (Rockett Will, 348 Pa. 445, 448), so that a register's decree of probate is final and not subject to collateral attack. Here, however, the changed wishes of testatrix as to burial of the remains of her husband and herself are not dispositive, and only the residuary legatees will be affected and this to their financial betterment. These papers, when accepted by the register as a codicil, will supplement the probated will. There is authority for

dispensing with the technicality of an appeal under such circumstances: Dreisbach Estate, supra, 541, 542; Sebik's Estate, 300 Pa. 45, 48, 51. Concededly, if a gift of property were involved, the requirements of section 208(a), (b) and 303(b) of the Register of Wills Act of June 28, 1951, P. L. 638, sec. 208, 20 PS §§1840.208(a), (b) and 1840.303(b), would have to be met.

The accountant has requested that the sum of $1,100 be awarded to Westminster Cemetery in trust, $500 to provide for perpetual care of decedent's cemetery lot, and $600, in lieu of the $500 provided for in her will, to provide for planting of evergreens on the cemetery lot and placement of floral decorations on Memorial Day, Christmas and Easter. Mr. Lutz, on behalf of the Westminster Cemetery, has agreed to accept the sum of $1,100 to be so applied. An award will be made accordingly. . . .

And now, February 23, 1961, the account is confirmed nisi. Absolute confirmation is suspended until 15 days after filing with the auditing judge an affidavit of proof of compliance with the above direction for the probate as a codicil of decedent's letter dated July 18, 1958, and the grave plot plan for lot no. 630, as above.

And further, the decree of the register of wills entered November 6, 1959, admitting to probate a certain writing dated August 1, 1953, as the last will and testament of Mary Anna Mayer, deceased, is hereby opened insofar as to enable the register of wills to consider and act upon a petition for probate of a later writing dated July 18, 1958, and accompanying grave plot plan for lot no. 630 west half Bryn Mawr section, as a codicil to the last will and testament of decedent.