# Close's Estate.

*Wills—Cemeteries—Care—Bequests—Act of May 26, 1891, P. L. 119.*

1. The Act of May 26, 1891, P. L. 119, legalizing dispositions in perpetuity for the care of burial places was intended to cover and treat as if for a charity any and all bequests and devises for the purposes enumerated therein and even where a testator gives his entire estate the law will not intervene unless the donation is so gross and extravagant in amount and value as to transgress the rule of public policy.

2. A mortuary chapel is an erection within the meaning of the said act and the maintenance thereof will cover replacement and repair of any and every kind.

3. A testator who was unmarried and without issue bequeathed the income on $9,000 for the care and maintenance of certain family lots, three-fourths of the income of the residue, which residue approximated $36,000, for similar purposes and for the beautifying of a cemetery, including the upkeep of the chapel, and the surplus towards a fund for erecting a new chapel to replace the old one, one-fourth of the income of the residue for the care of a lot in, and for beautifying and keeping in repair a certain other cemetery. Testator further directed that if the trustees of the cemetery should refuse to allow the income to be so used or if any of the legacies should fail or become void, the funds or income or any surplus income should pass to a named home for poor children. The home for poor children contended that sufficient of the corpus should be set aside to make effective the testator's desires and that all excess principal or income should be awarded to it. *Held,* the Orphans' Court properly refused the claim without prejudice to the right of said home to make a further application, if it could at any time show that all of the income was not required for the upkeep of the cemetery and burial lots.

Argued Jan. 9, 1918. Appeal, No. 90, Jan. T., 1917, by the Western Home for Poor Children, from decree of O. C. Philadelphia Co., Jan. T., 1916, No. 517, dismissing exceptions to adjudication, in Estate of Henry Close, Deceased. Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ. Affirmed.

Exceptions to adjudication.

LAMORELLE, J., filed the following opinion:

A determination of the questions raised by the exceptions involves primarily the proper interpretation of "An act legalizing dispositions in perpetuity for the care of burial places," approved May 26, 1891, P. L. 119, which act provides:

"That no disposition of property hereafter made for the maintenance or care of any cemetery, church yard or other place for the burial of the dead, or of any portion thereof, or grave therein or monuments or other erections on or about the same, shall fail by reason of such disposition having been made in perpetuity, but such disposition shall be held to be made for a charitable use."

This legislation is broad and comprehensive. It evidently was intended to cover, and by express language it does embrace and treat as if for a charitable use any and all bequests and devises for the enumerated purposes; and even where, as in the present case, testator gives his entire estate, the law will not intervene, unless the donation is so gross and extravagant in amount and value as to transgress the rule of public policy (see Palethorp's Estate, 249 Pa. 389). Testator himself, however seems to have provided for such intervention by the residuary gift; so that in no event can there be an intestacy nor can the next of kin be recognized unless we do violence to the language of the will and hold that an intestacy ensues, when the whole expressed purpose of the will is to avoid that very condition.

Testator, who was unmarried and without issue, destined all his property, first, to the extent of the income on $9,000, for the care and maintenance of family lots, three in named cemeteries and one a burial plot on a farm; and, secondly, three-fourths of the income of the residue (which residue approximated $36,000) for similar purposes, and, in addition, for beautifying St. Michael's cemetery, including the upkeep of the chapel; and the surplus toward a fund for erecting a new chapel to

replace the old one; and one-fourth for the care of lot and for beautifying and keeping in repair the Methodist cemetery.

The executor, to whom the estate was left in trust, was to see that the income should be expended for the designated purposes, and, if the trustees of the cemeteries should refuse to allow the income to be so used or if any of the legacies should fail or become void, the "funds" or "income" and, in any and every event any surplus income, passed to the Western Home for Poor Children.

The auditing judge upheld the provisions of the will; gave leave to the Western Home to make a further application if it could at any time show that all the income of the three legacies aggregating $9,000 and of the residue was not required for the upkeep of the cemetery and burial lots; refused to allow collateral inheritance tax on any of this income, without prejudice to the rights of the Commonwealth in event that it should ultimately appear that any of the income passed to the residuary legatee; decided that no principal was distributable (except to the executor as trustee) because no legacies failed or were void, and also that no income was presently payable to the Western Home because there was no evidence that there was or would be a surplus.

The Commonwealth files one exception: to the ruling of the auditing judge that the income of the legacies aggregating $9,000 is free from tax. It claims that the will offends the Act of March 5th, 1903, P. L. 12, which act is in language following:

"That hereafter all bequests and devises in trust for the purpose of applying the entire interest or income thereof to the care and preservation of the family burial lot or lots of the donor, in good order and repair perpetually shall be exempt from liability for collateral inheritance tax......"

In short, as testator does not appropriate the entire income, the legacies do not come within the purview of the statute.

This exception must be dismissed; such a construction is narrow and technical; it tends to defeat the very object of the act, for, if in a given case all of the income should not be consumed, then the whole legacy and not merely the surplus would be taxable. The auditing judge has accurately drawn the line.

The next of kin except. To sustain any of their exceptions we must decree an intestacy. Not only is an intestacy repugnant to the whole scheme of the will, but is in the very teeth of testator's expressed intent. He leaves his whole estate in trust, specifying in detail how, in the first instance, the income is to be applied, and then, to forestall any such contention as is now advanced by his living relatives, provides as follows:

"In the event of the trustee of either or both of the said cemeteries refusing to allow said income to be expended as above, or if any of the above devises or legacies shall fail or be void I give and bequeath said funds or income or any surplus income derived from any of the above legacies to Western Home for Poor Children at Forty-first and Baring streets, Philadelphia, Pa."

The trustees have not refused; none of the legacies have failed, nor are any of them void—and, if they did fail or were void, the word "funds" is ample enough to cover principal and "surplus" income is self-explanatory;—and both are given to the residuary legatee. These exceptions too must be dismissed.

The Western Home excepts: Its contention is that it was the duty of the auditing judge to set aside sufficient, but no more, of the corpus to make effective testator's desires, and that all excess principal or income should have been awarded to the residuary legatee. We are therefore to inquire whether the will does transcend the law. Testator was dealing with his own, and his will must be upheld unless clearly violative of law or in conflict with the policy of the law.

In Smith's Est., 181 Pa. 109, Judge HANNA (whose opinion was in effect adopted by the Supreme Court)

said, in speaking of the testator in that case: "He left no children or other descendants who were thus deprived of their inheritance and disappointed in their expectations of enjoyment of so large a fortune. Testator was disposing of his own money. This is a right assured to him by law, and restrained only by those enactments and principles of public policy, which, for the good order and welfare of society, have been established by the legislation or by courts. Gifts for the erection of monuments and construction of vaults or tombs in cemetery lots, and inclosing the same, and providing for their future care and adornment, together with other similar mortuary gifts, have ever been recognized, and the wishes of the donor or testator carried out by the courts. And, to remove all doubt upon the subject, the legislature by the Act of May 26, 1891, P. L. 119, expressly declared that no disposition of property hereafter made for the maintenance or care of any cemetery, church yard, etc., or monument or other erections on or about the same, shall 'fail by reason of such disposition having been made in perpetuity but shall be held to be made for charitable use.' Nor are we aware it has ever been suggested that, in the absence of any express statute, the courts will regulate the amount the testator may direct to be thus expended. We see no reason why he may not bequeath his entire estate for such purposes."

And of like effect is Mr. Justice MERCUR's opinion in Bainbridge's App., 97 Pa. 482 (at page 485), where an unmarried man directed that, upon his mother's death, his estate should be appropriated for a monument over his grave. "May not the testator have said to the appellant as the good man of the house said to the laborer 'is it not lawful for me to do what I will with mine own?'" The folly or the wisdom of the disposition is not for the court.

We are of the opinion in the case now before us that testator has brought himself within a literal, if fairly liberal construction of the Act of May 26, 1891, supra.

It is possible that all of the income may be necessary for the maintenance and care; and surely a mortuary chapel is an erection within the legislative conception. "Maintenance" will cover replacement and repair of any and every kind; if ever there is any surplus to be used for building a new chapel,, it will then be time enough to pass upon that question; at present, it does not arise. If one of the objects is void, the whole gift does not fall; see discussion by Judge DALLETT in Palethrop's Est., supra.

Whether the Act of May 14, 1874 (P. L. 165), authorizing incorporated cemetery companies to receive donations is unconstitutional is of no moment; for, in our judgment, this act has no bearing upon the case. Here the duty of applying the income is imposed on the executor, as trustee, and that trustee is responsible for its proper use. These exceptions must also be dismissed.

The auditing judge has exhaustively discussed the questions involved, we deem it unnecessary to say more.

The court in banc dismissed the exceptions. The Western Home for Poor Children appealed.

*Errors assigned* were in dismissing the exceptions.

*Alex. Simpson, Jr.,* with him *Lawrence C. Hickman,* for appellant.

*Cyrus G. Derr,* for St. Michael's Cemetery, appellee.

*Frank S. Livingood,* for Aulenbach Cemetery, appellee.

*John B. Rutherford,* for The Pennsylvania Trust Company, executor and trustee.

PER CURIAM, February 18, 1918:

The decree in this case is affirmed by the majority of this court on the opinion of the learned court below in banc dismissing the exceptions to the adjudication.