## Ashbridge's Estate

344

*Victor J. Roberts,* of *High, Dettra & Swartz,* and *Harrison H. Clement,* for appellants.

*Paul P. Wisler,* for Commonwealth.

HOLLAND, P. J., February 8, 1943.—This is an appeal by the executors of decedent's will and by the trustee under a deed of trust inter vivos created by decedent and her sister from the inheritance tax appraisement filed, on the ground that it includes assets not properly taxable. The following facts have been stipulated by counsel.

On January 2, 1929, decedent and her sister, Eliza Helen Ashbridge, executed a joint deed of trust. Thereby they transferred to Girard Trust Company, of Philadelphia, as trustee, the sum of $15,000 in cash, each contributing one half. The settlors reserved to themselves, for their lives, and to the survivor, for her life, the income and the right to revoke or modify the trust. It provides that after the death of the survivor the trustee shall pay the net income to the treasurer of the cemetery of the Lower Merion Baptist Church, in Bryn Mawr, "to be used by the Cemetery for the purpose of keeping in good order and repair the lots and markers and enclosures, if such be necessary, of Joshua

Ashbridge and Peter Pechin, forever . . . And furthermore, . . . any income not used for the immediate care of the lots above referred to and the markers therein, and the enclosures, may be used by the Treasurer of the Cemetery Company for the general care and maintenance of the Lower Merion Baptist Church Cemetery, and also of the church grounds and buildings".

There are other provisions in the event that the bodies interred in those lots should be removed to some other cemetery, or if the church mentioned should remove or be abandoned. In that connection, the settlors' general intent is expressly stated as being "to first provide for the care of the lots in all respects of Joshua Ashbridge and Peter Pechin, wherever they may be, and then to apply any surplus income to the general maintenance of the Cemetery in which such lots are located, and afterward to the Church grounds and buildings appurtenant to the Cemetery, if such there be." The trustee is given the duty to inspect the lots at least annually, and if in its judgment they are not properly cared for it is authorized to discontinue the payment of income to the organization in charge of the lots and to pay it to the Bryn Mawr Hospital instead.

Joshua Ashbridge was settlors' father, and Peter Pechin was their maternal grandfather. The former had one lot and the latter had three lots in the Lower Merion Baptist Church Cemetery. In size, each lot is about eight feet by eighteen feet.

Eliza Helen Ashbridge died on December 13, 1938, and decedent on July 18, 1940. Both were buried in the Joshua Ashbridge lot, which contains also the bodies of their father, mother, brother, and another sister.

In the first Peter Pechin lot are buried settlors' said grandfather, his wife, their grandmother, an aunt, an uncle, and two first cousins. The second Pechin lot contains an uncle and his wife. In the third are interred an uncle and his wife, and three first cousins.

The inheritance tax appraisement in decedent's estate was filed on December 12, 1941. The gross appraisement of decedent's separate real and personal estate is $318,410.35. Also included are the assets in the hands of Girard Trust Company, trustee under the deed of trust, valued at $11,575.56. The gross estate subject to tax thereby totals $329,985.91.

In the statement of debts and deductions the appellant-executors included administration expenses of the trust inter vivos amounting to $1,102.06, and also $5,000 as the "amount necessary to purchase sufficient income for the care and preservation of the family burial lot and monuments thereon . . ." They claimed that if the trust is taxable one half the total of $6,102.06 should be allowed as a deduction. An accompanying schedule estimated the cost of maintaining the lots at $2,906 over twenty years. No part of these deductions was allowed by the register of wills.

It is also stipulated that the annual cost of maintaining each of the four lots, in the order above named, is: $23.54, $55.39, $26.89, $39.48—a total of $145.30; and that the amounts of principal required to yield those sums annually are: $811.72; $1,910; $972.24; $1,361.38—a total of $5,055.34.

The trustee of the trust inter vivos filed an account in the Orphans' Court of Philadelphia County after the death of decedent, being no. 429 of 1941, which was audited on April 7, 1941. In Judge Sinkler's adjudication of October 28, 1942, the appearance of a Special Deputy Attorney General for the Commonwealth is noted, and his claim for such inheritance tax as may be due is noted. Counsel for accountant denied any tax liability, but contended that, if any were due, it should be assessed by the Register of Wills of Montgomery County because both settlors died residents of this county. Counsel for the Commonwealth agreed to the latter view, so the court awarded distribution not sub-

ject to tax but without prejudice to the Commonwealth to raise the question here.

Appellants' first contention is that under the Act of March 5, 1903, P. L. 12, sec. 1, 9 PS §6, the entire trust is exempt from tax; or, alternatively, that under the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, art. I, sec. 2, as amended, 72 PS §2302, the entire amount of the trust is deductible from the gross value of the estate in determining the clear value subject to tax.

Under the Collateral Inheritance Tax Act of May 6, 1887, P. L. 79, bequests for the care of cemetery lots were not expressly exempted from the tax. Long's Estate, 22 Pa. Superior Ct. 370 (1903), held such a bequest in trust to care for the graves of decedent, his father, grandparents, and other relations taxable. Middleton's Estate, 13 Dist. R. 811 (1904), affirmed on other grounds, 212 Pa. 119 (1905), held such a bequest not taxable, distinguishing the former case because the bequest there covered lots other than testator's. To the same effect is Dingee's Estate, 14 Dist. R. 225 (1905).

By the Act of 1903, trusts "for the purpose of applying the entire interest or income thereof to the care and preservation of the family burial lot or lots of the donor, in good order and repair perpetually, shall be exempt from liability for collateral inheritance tax." An opinion of the Attorney General, Tax on Bequests for Care of Cemetery, 14 Dist. R. 470 (1904), held that a trust for the upkeep of lots of persons not of testator's immediate family and of the graveyard itself was too broad for exemption under this act. But the word "family" as there used was held to mean all relations descended from a common ancestor: Lewellen's Estate, 22 Dist. R. 80 (1912).

The Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, provided for deductions in section 2, but restricted them to debts and administration expenses.

The amendment by the Act of July 12, 1923, P. L. 1078, added, as deductions: ". . . bequests or devises in trust, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial lot or lots, their enclosures and structures erected thereon . . ." The phraseology is almost exactly the same as that of the Act of 1903, with the exception of adding "in reasonable amounts". Subsequent amendments to the Act of 1923 leave this wording unchanged.

The Act of 1903 was not expressly repealed by the Act of 1923 or any amendment thereto, and there is no decision on the question of repeal because of inconsistency. Probably it ought to be regarded as repealed for that reason. However, that question goes to procedure and not to substance. The difference in wording is inconsequential. The unreasonableness of the amount was made an issue even under the Act of 1903, which did not expressly require it: Dingee's Estate, supra. Procedurally, the result is accomplished under the Act of 1903 by excluding the cemetery trust from the gross assets, whereas under the Transfer Inheritance Tax Act it was done by including it with the gross assets but allowing a deduction in determining the taxable clear value. The net result is the same in either case, yet the procedure should be uniform, and to that end the Act of 1923 construed as repealing the Act of 1903. Cases since the Act of 1923 appear to have taken this for granted without saying so.

Insofar as the relationship to the settlors of the persons whose bodies are interred in the four lots is concerned, the case is clear. The above-mentioned definition of "family" as used in the act seems eminently just, when kept within a reasonable number of generations and not traced too close to Adam. Of the 18 other than decedent herself, only the wives of two uncles fail to meet this test. And if the uncles are qualified their wives should not be denied admission.

Likewise the amount does not exceed the bounds of reasonableness, considering that the gross estate is almost $330,000. If the trust is taxable, it is because its purpose goes beyond the care of the lots and markers thereon.

There are two cases on the subject: Close's Estate, 260 Pa. 269, 272 (1918), and Lefevre's Estate, 9 D. & C. 654, 657 (1927).

In Close's Estate, a fund of $9,000 was given in trust for the care of four cemetery lots, and the income from the trust of the residue ($36,000) for similar purposes. Testator provided that any income or funds not thus used should be paid to a charity. The auditing judge held that no tax was due, without prejudice to the Commonwealth, if it should ultimately appear that anything passed to the residuary legatee. Exceptions were filed by the Commonwealth as to the income on the $9,000 trust only, contending that the legacy was taxable because the *entire* income was not appropriated for the care of the lots. The court en banc dismissed the exception as too "narrow and technical" a construction of the Act of 1903, for it would follow that "if in a given case all of the income should not be consumed, then the whole legacy and not merely the surplus would be taxable." The Supreme Court affirmed, per curiam.

Lefevre's Estate was under the Act of 1923. Testator gave $200 in trust for the upkeep of a cemetery lot, and the "balance to be for the benefit of the said Bowman cemetery". In vigorous language the Orphans' Court of Lancaster County held the entire trust taxable, because "The testator has so scrambled the restricted with the unrestricted as to have put the legacy in a class which has no immunity from the tax." Close's Estate is not cited in the opinion.

As authority here, Close's Estate is aptly entitled. The legislature presumably had a reason for confining freedom from the tax to those cemetery trusts whose

*entire* income goes to the purposes named, else that restriction would have been omitted. A good practical reason is to avoid the necessity for any unscrambling. With a safe and sure route well marked out, a testator who prefers to hew his own trail has no one to blame but himself if he misses his destination. From the viewpoint of statutory construction we should be inclined to follow the Orphans' Court of Lancaster County rather than that of Philadelphia County. Yet we feel bound by Close's Estate to construe the Act of 1923 in the same way as the Act of 1903 was construed there. Accordingly, we hold that the fact that less than the entire income will be used for the care of the cemetery lots does not render the entire trust taxable.

However, it does not follow that the entire trust is therefore a deduction, as appellants contend first. In Close's Estate, there was no evidence as to how much of the trust would go to the tax-free purposes, and how much to the residuary legatee, if any. Hence the decision was tentative only, and without prejudice to the rights of the Commonwealth to claim tax subsequently if it should appear that income passed to the residuary legatee. In that respect this case is distinguishable. We know at the outset that the income from but $5,055.34 of the entire corpus of $11,575.56, will be needed for the actual care of the lots and markers. (Stipulation, par. 8.) Hence the income from the excess of $6,520.22 will go to the maintenance of the cemetery in general, and of the church grounds and buildings. Not even in Close's Estate was it contemplated that the entire trust should escape taxation because a part of it was exempt or a proper deduction. No more than $5,055.34 of the principal of the trust is allowable as a deduction, and appellants' alternative contention to that effect must be sustained.

It is further contended that but one half the assets of the trust are to be included in the gross appraisement of decedent's estate because she originally con-

tributed that portion of the whole. Between the time of the death of her sister, the contributor of the other half, and her own death, decedent held only a power of revocation over the half given by the sister. As that power was not exercised, its extinction by decedent's death is submitted not to amount to a taxable transfer by her of the other half.

In the estate of Eliza Helen Ashbridge (see opinion filed concurrently herewith), a supplemental appraisement of the assets of this trust was filed after this decedent died. The entire assets were appraised as of the death of Eliza Helen Ashbridge, at $11,291.80, but additional tax was claimed on only a one-half interest, or $5,645.90. With that, appellants have no quarrel— except, of course, as to the deductions. There is no objection to taxing Eliza Helen's one half upon her death, and Emily Rebecca's one half upon her death. The protest is to a second tax on Eliza Helen's one half after Emily Rebecca's death. For similar reasons, the total deduction of $5,055.34 is submitted to be equally divisible between the two estates.

Appellants' contention on this point seems fallacious at first blush. If one half of the trust is properly included as part of Eliza Helen's gross estate after her death, which is admitted, it is because there was a transfer. Likewise, if any part of the trust is properly included as part of Emily Rebecca's gross estate now, it is because of a transfer. Again, there is no suggestion that liability to tax was avoided by the device of a trust inter vivos. To whom, and of what, were these transfers? Clearly, Eliza Helen's death benefited only Emily Rebecca. Thereafter, this decedent had the enjoyment for life of the income from her sister's contribution to the trust, something she did not have theretofore. The cemetery thereby became entitled to nothing, and did not come in until after Emily Rebecca's death.

On principle it appears clear that upon Eliza Helen's death there was a taxable transfer of a life interest in one half of the then value of the corpus to Emily Rebecca; and, upon her death, a taxable transfer of the entire corpus to the cemetery.

Lowry's Estate, 314 Pa. 518 (1934), cited by appellants, is not in point. There the question was whether the death of a joint tenant constituted a "transfer" to the survivor so as to be subject to inheritance tax under the law as it then was by the Act of May 16, 1929, P. L. 1795, amending the Transfer Inheritance Tax Act. Of course, each joint tenant has an undivided moiety of the whole. His interest is precisely the same as that of his co-tenant. It is the very essence of such a tenancy that upon the death of one the survivor has no more than he had before. Hence there is no transfer, and, under the Act of 1929, there was no tax. Subsequent amendment has changed the situation.

Dolan's Estate, 279 Pa. 582 (1924), also cited, is authority that the reservation of the power of revocation by the settlor of a trust inter vivos, never exercised, but extinguished by the settlor's death, does not thereupon work a transfer subject to tax. But there the settlor did not reserve the income to herself for life. From the beginning of the trust, income was payable to settlor's sons and continued to them for their lives. The settlor's death caused no change.

In the present case, it is not the power to revoke, but the fact that the beneficial enjoyment passed to another upon the death of the settlor, which renders it a taxable transfer: Leffmann's Estate, 312 Pa. 236 (1933); Cooper's Estate, 320 Pa. 418 (1936).

The result reached above on principle does not appear to violate any binding authority. After the death of Eliza Helen Ashbridge collateral transfer inheritance tax at the rate of 10 percent should have been paid on the then value of Emily Rebecca Ashbridge's life interest in $5,645.90, that being one half the value

of the entire principal as of Eliza Helen's death. As the trust did not thereafter begin to function as a cemetery trust, no deduction of the cost of caring for the lots, or any part thereof, would have been allowable if the tax had then been paid. Likewise, as no account of the trust was filed after Eliza Helen's death, no question of administration expenses of the trust, as a deduction in computing the tax, then arose. Had such tax then been paid, it would have been chargeable to Emily Rebecca as the beneficiary of the life interest. None of it would have come out of Eliza Helen's estate. The tax was not then paid, with the result that Emily Rebecca during her lifetime escaped a liability which was properly hers, personally. Hence this tax must now be paid by her executors out of her separate estate.

After Emily Rebecca's death, collateral transfer inheritance tax at the rate of 10 percent became payable on the clear value of the trust passing to taxable purposes. From the gross value of $11,575.56, there is first allowable as a deduction the full amount of $5,055.34 required to care for the family cemetery lots. As a further deduction, the full amount of $1,102.06, being the administration expenses of the trust, is allowable. The clear value of the trust subject to tax thus is $5,418.16. This item of tax is of course deductible from the legacy to the cemetery.

As the matter has been in litigation, interest at six percent only shall be due on both items.

And now, February 8, 1943, the appeal is sustained in part; the inheritance tax appraiser and the register of wills are directed to appraise the assets, allow deductions, and assess the tax, in accordance with this opinion.