**Lyon Estate**

*Charles H. Davison*, for petitioners.

EPPINGER, P. J., November 13, 1974.—The executors of the Estate of Florence B. Lyon and

Princeton University filed a petition for a declaratory judgment. In her will, Mrs. Lyon attempts to set aside a substantial portion of her estate for the care of some animals. At the death of the animals, this part of the estate is to go to Princeton University. Some of the estate going to the university is to establish a scholarship fund in memory of her husband and the remainder may be used as the university sees fit.[1]

The court is asked to determine (1) whether the provision of the will relating to the care and maintenance of the animals is valid; (2) if so, whether all of the designated assets must be held for that purpose or whether a portion of the estate sufficient to satisfy the needs of the animals may be held for that purpose and the rest liquidated and distributed; or (3) whether the animals may be cared for at the Antietam Humane Society, provision for which is also made in Mrs. Lyon's will.

---

[1] The appropriate provisions of decedent's will are as follows:

"FOURTEENTH: It is my expressed direction that all dogs and horses upon the farm at the time of my death, shall be kept there and cared for until their deaths. To enable my Executor to carry out this provision I authorize him to use any of the principal or income from my estate as may be required to properly maintain and operate my farms and in his sole discretion, if he deems necessary, I direct that the payment of any of the above bequests be postponed, without interest.

"EIGHTEENTH: After the death of my dogs and horses as aforesaid and the conversion of the assets of the estate, other than securities into cash, I give, devise and bequeath all of the residue of my estate of every nature and wherever situate to Princeton University of Princeton, New Jersey, to be used for the following purposes:

"(a) I direct that a scholarship fund be created and designated as the 'Chester A. Lyon Scholarship' in the memory of my husband who graduated from the University.

"(b) Any funds remaining after the establishment of said Scholarship may be used as the University shall determine."

There are other interesting provisions in her will, but without quoting the exact language, the above summary is sufficient to present the problems in the case. Mrs. Lyon died June 18, 1973.

The court has jurisdiction to consider this matter on a petition for a declaratory judgment. The Uniform Declaratory Judgments Act as enacted in Pennsylvania, Act of June 18, 1923, P. L. 840, 12 PS §831, et seq., provides for it. Section 2 states that any person interested under a will may have any question of jurisdiction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations thereunder.

Section 4 gives an executor, trustee or devisee in the administration of a trust or estate the opportunity to have a declaration of rights or legal relations in respect to the trust or estate to determine any questions arising in the administration of the estate or trust, including questions of construction of wills.

Section 6 of the act vests in the court discretionary power to grant relief by declaratory judgment where there is an uncertainty with respect to the effect of any status, right or privilege upon the determination of any tax imposed or to be imposed by any taxing authority, including the United States. And section 11 requires that where taxes are involved, the appropriate taxing authorities shall be served with a copy of the proceedings, and if the taxing authority does not enter its appearance, the requirements of this section are satisfied if the court considers that the interests of the taxing authority are adequately represented.

Notice of these proceedings was given to the United States Commissioner of Internal Revenue, Washington, D. C., the District Director of Internal Revenue, Pittsburgh, Pa., and the Secretary of the Department

of Revenue of the Commonwealth of Pennsylvania, Harrisburg, Pa. None of these officers appeared. However, it is the view of the court that notice to them of the petition gave them an adequate opportunity to appear. It can only be assumed from their failure to appear that they have no objections to the prayer of the petition.[2] Thus, the court is called upon to decide the case on the evidence presented and the law, concluding that the interests of the taxing authorities have been adequately represented.

The executors of the Estate of Florence Lyon appeared, as did Mrs. Lashley in person, and the Citizens National Bank of Waynesboro, by its executive vice president and trust officer. Princeton University appeared by its secretary of the trustees.

The total value of the estate appraised for Pennsylvania Inheritance tax is $1.4 million, plus. And there is real estate in Washington County, Maryland, valued at $22,000. About $250,000 of the estate has been distributed. The income from the remainder and available to care for the animals is approximately $40,000 to $50,000 a year. Four horses and six dogs were living when Mrs. Lyon died and one of the dogs has died or disappeared. The nine living animals are now housed on a 560-acre farm being operated by the executors as a dairy farm.

The life expectancy of the animals varies from one to 20 years. It will take five acres of land, a $22,000 shelter and $5,000 a year to care for all of the presently living animals. It is reasonable to suppose that as the animals die the sum required would be less.

The language of the will seems to indicate that

[2] By letter of November 4, 1975, petitioners' attorney was notified by the United States Department of Justice that the Internal Revenue Service has no interest in participation in the proceedings and that the United States would not intervene.

Mrs. Lyon had an intent to create a trust. That trust, however, cannot be given effect because testatrix does not name a person, corporation or association with a beneficial interest capable of enforcing the duties of the trustee.[3] Animals being animals cannot ascertain that the provisions of the trust are being carried out. However, the fact that this paragraph of the will is not effective as a trust does not mean it may have no legal effect at all.[4]

A "trust" created for the purposes of caring for animals is sometimes called an "honorary trust."[5] Section 124 of Restatement 2d, Trusts, states that where property is transferred in trust for a noncharitable purpose and there is no definite or definitely ascertainable beneficiary designated (as for the care of animals), then no trust is created. However, the transferee has the power, if he decided to exercise it, to use the property for the designated purpose. There are limitations. The property may not be held for a purpose extending beyond the lives in being and 21 years nor may it be held for capricious purposes.

The law as thus developed seems reasonable. The idea that "honorary trusts" should be invalid emphasizes form over substance and neglects the responsibility of the court to ascertain the intent of the testatrix and give effect to it so far as is possible. Nonetheless, the executor could not be compelled to

---

[3] 54 Am. Jur., Trusts, §31.

[4] 96 C. J. S., 515, §1005.

[5] An honorary trust is a "non-charitable trust which has no ascertained or ascertainable beneficiaries and so is not enforceable, but one which the court permits the trustee, if willing, to carry out the purposes of the trust, and refuses to declare the trust void and to decree a resulting trust for the successors of the settlor, as long as the trustee acts in accordance with the terms of the gift": Bogert on Trusts, 2d Ed. §166, pages 131-132. See II Scott, Trusts, §124, 3d Ed.

exercise the power, and if, for whatever reason, he declined to do so, the residuary legatee would be entitled to have the residue of the estate distributed to it.

In a situation like the one in Mrs. Lyon's will, the rule against perpetuities (lives in being and 21 years) cannot be strictly applicable, because it imposes limits on the creation of future interests: Gray, The Rule Against Perpetuities (4th Ed.), §§1, 201: Probate, Estates and Fiduciaries Code of June 30, 1972 (No. 164), sec. 6104, 20 PS §6104. However, to permit testators to lock up their estates subject to noncharitable uses for long durations would not fit in well with the policy of the underlying rule.[6] A comment to section 124 of the Restatement 2d, Trusts, supra (at page 266), opines that where the property is for the maintenance of one or more animals, the provision would be invalid, since the period of the rule against perpetuities is measured by lives of persons and not lives of animals, whether or not the duration of the lives of the animals is shorter than that of a human being. But the Restatement then hedges, saying: "Whether in such cases the devisee or legatee can properly apply the property for a period of twenty-one years, on the ground that the annual payments are to be treated as separable, is not within the scope of the Restatement of this Subject."

In this case, the "trustees" have not refused to exercise the power to hold the property for the benefit of the animals. Rather they have specifically stated their willingness to comply with testatrix' expressed wishes insofar as the animals are concerned.

In Renner Estate, 358 Pa. 409, 57 A. 2d 836, testator gave his home, garage, contents, pets and flower garden to his friend who was also his executrix. Then

---

[6] Gray, supra, at section 2.1 suggests the policy to be "forwarding the circulation of property."

he gave his residuary estate to his executrix in trust "for the maintenance of my pets [a dog and a parrot], which I leave to her kind care and judgment, and for their interment upon their respective deaths . . . Upon the death and interment of the last of my pets to survive, I give, devise and bequeath my entire residue estate so held in trust unto the said [friend], absolutely and in fee." The Supreme Court held that there was no trust in the sense in which that term is used in courts in Pennsylvania and so the entire estate passed to the friend and she owed no enforceable duty to anyone.

Important for our consideration in this case, however, is a portion of the opinion at page 412 where the court said:

"He [the testator] knew that the maintenance and interment of the pets could not possibly consume the principal and income of the residue and obviously desired to give it to [the friend]; he could hardly have intended the fund to accumulate in violation of the Act of April 18, 1853, P.L. 503, 20 PS 3251."[7]

There is language in this will that suggests that Mrs. Lyon might not have had any idea how much it would cost to maintain the animals nor perhaps even how large her estate might be.[8] It is reasonable to suppose, however, that she did not intend her entire estate to be tied up for the lives of the animals if less

---

[7] The Act of 1853 related to the rule against accumulation and might not be applicable here because the rule was changed July 1, 1972, prior to Mrs. Lyon's death by the Act of June 30, 1972 (No. 164), § 6106, Probate, Estates and Fiduciaries Code, 20 PS § 6106.

[8] In the paragraph providing for the lifetime care of the animals, in order to permit the executor to carry out the purpose, testratrix said: ". . . I direct that the payment of any of the above bequests (substantial monetary bequests to individuals) be postponed, without interest."

than the full estate was necessary for the purpose. In fact, the indefiniteness which permits the executors to postpone specific bequests if the fund is not large enough to care for the animals suggests a certain amount of discretion to be vested in the executors in the event they decide to comply with her wishes and care for her animals.

We conclude, therefore, that the Pennsylvania courts would not follow the rule of the Restatement,[9] to the effect that, where there is a transfer in trust for a specific noncharitable purpose, the devisee has no power to apply the property to the designated purpose if the value to be devoted to that purpose is excessive, though obviously excessive gifts for noncharitable specific purposes would not be approved by the courts as a matter of public policy: Close's Estate, 260 Pa. 269, 103 Atl. 822. We believe the law of Pennsylvania which permits an owner to do what he pleases with his property provided it is not unlawful: Dulles's Estate, 218 Pa. 162, 67 Atl. 49, suggests that the provisions of the will with regard to the animals should be carried out if it can be done.[10]

Further, we conclude that the court, in dealing with the administration of this estate, is not acting in the traditional way in which courts act, but as an administrative tribunal. "It is arguable that since the court has control over the administration of the trust it can act in its own initiative in directing the carrying out of the purpose of the testator."[11] Following these principles in a number of Pennsylvania cases establishing cemetery trusts (held to be honorary trusts in other jurisdictions, but valid by statute

[9] Restatement 2d, Trusts, supra, § 124.

[10] Note "Honorary Trust in Pennsylvania," 42 Dickinson Law Review 161.

[11] Scott, supra, § 124.

in Pennsylvania[12]), the courts have reduced the amount stated in the will to an amount which would provide the necessary income for the purposes for which the trust is created: Dreisbach Estate, 384 Pa. 535, 121 A. 2d 74; Palethorp's Estate, 249 Pa. 389, 94 Atl. 1060; Leber's Estate, 123 Pa. Superior Ct. 1, 186 Atl. 225; Wood Estate, 12 D. & C. 2d 577; Convey Estate, 70 D. & C. 612; and Kreps Estate, 1 Fiduc. 99.

In these cases, the courts were construing particular wills to arrive at the intent of the decedent. In Convey, for instance, testatrix made certain pecuniary bequests and then left the residue in a cemetery trust. Later, she revoked the pecuniary bequests, feeling that to pay them would leave an insufficient estate for the cemetery trust. The court decided that she acted under a mistake of fact and held that the bequests should be paid. The amount left to the cemetery exceeded the sum required for that purpose. As counsel for petitioners said in his brief in our case: ". . . it might be said that Mrs. Lyon intended that her residuary estate should benefit the specific animals on her property at the time of her death and Princeton University and, she being under a mistake of fact as to the amount of her estate necessary to properly care for the animals, she intended that any amount in excess of this should be distributed to Princeton University immediately."

Thus, the proposition that the entire 1.4 million, or a substantial portion of it, may be retained to benefit the animals is patently unsupportable. In no case that we examined approving the trustees' exercise of the powers granted in an honorary trust, has the amount of the corpus been so out of proportion to the stated

---

[12] Probate, Estates and Fiduciaries Code, supra, 20 PS §6104-(b)(2).

purposes. Reducing the amount over which the executors have such power is, therefore, justified on the theory that testatrix mistook the amount of money necessary to provide for the animals. Her actual intent is better served by computing a reasonable figure for such purpose and accelerating the gift of the residue over and above this amount. The traditionally broad equity powers of the Orphans' Court can be invoked to reach this more seemly result.

## ORDER OF COURT

Now, November 13, 1974, it is ordered that if the executors are willing to exercise the authority in the will of Florence Lyon, decedent, to care for the animals on her farm at the time of her death, the executors may do so in one of the following ways:

(1) Enter into an agreement with the Antietam Humane Society for the care of the animals for a period not to exceed 21 years from June 18, 1973, and reserve $150,000 to be held by the executors to provide income for the care of the animals at the society; or

(2) Reserve five acres of ground, expend the sum not to exceed $25,000 for the construction of a building to house the animals and reserve $125,000 to provide income for the care of the animals, all to be held by the executors for a period not to exceed 21 years from June 18, 1973; or

(3) Provide for the care of the animals by entering into an agreement with Princeton University under the terms of which the university would agree to care for the animals during the lifetime of the animals as testatrix requested, in consideration of the executors refraining from exercising the authority granted by the will to the executors to provide for the care of the animals and the payment of the entire residue to the university at this time.

If options (1) or (2) are followed by the executors, then the remainder of the residue of the estate shall be paid to Princeton University at this time and upon the passage of 21 years from June 18, 1973, or the death of the last survivor of the animals, whichever occurs first, the estate so held by the said executors shall be paid over to Princeton University. Income accumulated by the executors in excess of that required by the executors for the care of the animals shall be paid periodically to Princeton University.

The willingness of the executors to carry out the provisions of the will for the care of the animals and the election of the method by which they will accomplish this purpose shall be stated in writing and filed in the office of the Clerk of the Orphans' Court Division within 60 days from this date. In default of such filing, the entire residue of the estate shall vest in the Trustees of Princeton University. Costs of these proceedings shall be paid from the estate of decedent.